```
               UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

JIAJING (BEIJING) TOURISM CO., LTD,
     Petitioner,


     v.                                CIVIL ACTION NO.
                                       20-11313-MBB

AEROBALLOON USA, INC.,
DOUGLAS A. HASE, and
EVEREST BALLOON LLC,
     Respondents.
```

**MEMORANDUM AND ORDER RE:**
**MOTION TO COMPEL PRODUCTION OF 2016 AND 2017 TAX RETURNS**
**OF RESPONDENTS AEROBALLOON AND DOUGLAS A. HASE**
**(DOCKET ENTRY # 108)**

**January 31, 2022**

**BOWLER, U.S.M.J.**

Petitioner Jiajing (Beijing) Tourism Co., Ltd. ("petitioner") seeks production of 2016 and 2017 federal tax returns of respondents AeroBalloon USA, Inc. ("AeroBalloon") and Douglas A. Hase ("Hase"), the sole officer, director, and principal shareholder of AeroBalloon.  (Docket Entry # 108) (Docket Entry # 102, ¶ 4) (Docket Entry # 118, ¶ 4). AeroBalloon, Hase, and respondent Everest Balloon LLC ("respondents") oppose the motion.  (Docket Entry # 121).  After conducting a hearing on January 26, 2022, this court took the motion (Docket Entry # 108) under advisement.

BACKGROUND

On October 12, 2021, this court allowed in part and denied in part a motion to quash a subpoena (Docket Entry # 82) seeking

deposition testimony from an accountant who prepared AeroBalloon's 2019 federal and state tax returns (Docket Entry # 66-4, pp. 21, 35-36), and documents including, inter alia, AeroBalloon's and Hase's federal tax returns for the years 2016 to 2020.  (Docket Entry # 91).  The ruling denied the motion as to AeroBalloon's 2018 federal tax return and Hase's 2018 and 2019 federal tax returns and otherwise allowed the motion.  Hence, this court allowed the motion to quash the subpoena for AeroBalloon's and Hase's federal tax returns for 2016 and 2017.  Separately, the opinion sets out relevant factual background and summarizes the claims in an amended verified petition (Docket Entry # 10), which need not be repeated.  (Docket Entry # 91).

After this court issued the October 12, 2021 ruling, petitioner filed a motion to amend the petition, which this court allowed on December 8, 2021.  (Docket Entry ## 92, 101).  Petitioner filed the second amended petition the same day.  (Docket Entry # 102).  The legal claims in counts II, III, and IV in the second amended petition remain largely unchanged from the prior petition.  In certain respects, however, the second amended petition alters the underlying facts.  The second amended petition omits Tethered Balloon from the "Hase Entities" and adds Nantucket Boat Works, LLC, Mountains & Seas LLC, and Starlift Technologies, Inc., which, "along with AeroBalloon and Everest Balloon" comprise "the 'Hase Entities.'"  (Docket Entry # 102, ¶

4). In Counts II and III and similar to the prior petition, the second amended petition seeks to impose liability against Hase and the Hase Entities on the basis of fraudulent transfers, alter ego, and piercing the corporate veil. (Docket Entry # 102, p. 1) (Docket Entry # 102, ¶¶ 54-66) (Docket Entry # 10, ¶¶ 29-39). Hase purportedly caused AeroBalloon to transfer funds and assets of AeroBalloon to himself and the Hase Entities, all of which Hase controlled, for less than fair market value and at a time when AeroBalloon was insolvent or rendered insolvent by the transfers. Hase allegedly made the transfers with the intent to defraud AeroBalloon's creditors, including petitioner. (Docket Entry # 102, ¶¶ 54-66). As further alleged in the second amended petition, Hase not only controlled the Hase Entities but "commingled the funds and assets of the Hase Entities and himself and diverted the Hase Entities' funds and assets for his own personal use." (Docket Entry # 102, ¶ 64).

    As a result of the amendment, the material facts underlying the existing legal claims expanded to include the 2016 and 2017 time period. Regarding that time period, the record evidences transfers of $546,466 in 2016 and $434,805 in 2017 from AeroBalloon to: Hase's personal checking account, Hase's joint money market account, a Hase and Kaplan Irrevocable Trust, and/or Hase directly or doing business as Newport Partners, according to

petitioner's experts.[1]  (Docket Entry # 100, p. 12).[2] AeroBalloon also made credit card payments for Hase's charges on AeroBalloon credit cards totaling $135,312 in 2016 and a lesser amount in 2017, a number of which were for personal expenses such as grocery bills and haircuts.  (Docket Entry # 85, ¶ 9) (Docket Entry # 100, pp. 12, 13 and n.17, 33-37) (Docket Entry # 74-1, ¶ 3).  Hase acknowledges using AeroBalloon's credit card for personal expenditures, including for groceries, a family trip, and other "non-AB purchases," and thereafter repaying the funds from a personal bank account.  (Docket Entry # 84-5, pp. 13-14) (Docket Entry # 74-1, ¶ 3).

Using bank statements and other financial information produced in this case, Platt provides a relatively comprehensive analysis of the insolvency of AeroBalloon in 2016 and 2017. (Docket Entry # 100, pp. 14, 19-20, ¶¶ 22, 41-42).  AeroBalloon's liabilities exceeded the company's assets at the end of 2016 (as of January 1, 2017) by $255,988 and at the end of 2017 (as of January 1, 2018) by $796,607.  Platt's calculations considered cash balances, accounts receivable (which Platt records as zero),

---

[1] Simon D.J. Platt ("Platt"), one of plaintiff's experts, thus renders an opinion regarding the transfers that took place in 2016 and 2017.  (Docket Entry # 100, p. 12).  He also renders an opinion regarding AeroBalloon's insolvency during this time period.  (Docket Entry # 100, pp. 19-20, ¶¶ 41-42).

[2] Page numbers refer to the page number in the upper right hand corner of the docketed filing.

4

inventory, depreciable assets, and a state tax refund to arrive at AeroBalloon's total assets as of January 21, 2016 ($222,468); May 19, 2016 ($701,888); January 1, 2017 ($1,016,994); and January 1, 2018 ($476,375).  Platt then tabulated the amount of AeroBalloon's liabilities as of January 21, 2016 ($254,042); May 19, 2016 ($1,272,982); January 1, 2017 ($1,272,982); and January 1, 2018 ($1,272,982).  According to Platt, AeroBalloon's liabilities therefore exceeded its assets as of January 21, 2016 ($31,574); May 19, 2016 ($571,094); January 1, 2017 ($255,988); and January 1, 2018 ($796,607).  (Docket Entry # 100, pp. 19-20, ¶¶ 41-42).  Platt was able to arrive at these figures without access to the 2016 and 2017 tax returns.

Relative to 2017, he also opines that:

> [A]n analysis of the 2016 and 2017 bank statements indicates that AeroBalloon did not generate enough cash sales to offset its liabilities in 2016 and 2017.  For example, in 2017 cash deposited into AeroBalloon's bank account from customer sales was only approximately $230,000 and its highest monthly cash balance was $963,278 in January 2017.  Assuming there were no significant changes to the fair market value of AeroBalloon's non-cash assets and liabilities in 2017, AeroBalloon was likely insolvent as of January 1, 2017, when its cash balance was only $831,513, and continued to be insolvent in 2017.

(Docket Entry # 100, p. 19, ¶ 41).  With respect to 2016, Plat opines that:

> in 2016, just before the first payment was received from Jiajing on January 22, 2016, and after the last payment was received on May 18, 2016, AeroBalloon was likely insolvent and continued to be insolvent after May 18, 2016, assuming no significant changes to the fair market value of its non-cash assets and liabilities from January 1, 2018.  The highest monthly cash balance in 2016 was $940,686 in August.  AeroBalloon simply did not generate and maintain enough cash such that the fair market value of its assets would exceed its liabilities.

5

(Docket Entry # 100, p. 20, ¶ 42).

DISCUSSION

"Tax returns are discoverable if '(1) they are relevant to the action and (2) the information which they contain is otherwise unobtainable.'"  Elevate Group, LLC v. DataScience.codes, LLC, Civil Action No. 20-12084-PBS, 2021 WL 6108288, at *3 (D. Mass. Nov. 23, 2021) (citation omitted). "'The burden to show relevancy lies on the party seeking the returns; the party resisting disclosure bears the burden of establishing alternative sources for the information.'"  Id. (citation omitted).  As such, federal "tax returns do not enjoy an absolute privilege from discovery," and "are discoverable where the returns are relevant to the claims of the parties and the information is not readily available in another form."  Patel v. 7-Eleven, Inc., Civil Action No. 17-11414-NMG, 2019 WL 10959829, at *2 (D. Mass. Dec. 16, 2019) (citations omitted). This court also has considerable discretion in adjudicating discovery disputes.  See Markham Concepts, Inc. v. Hasbro, Inc., 1 F.4th 74, 86 (1st Cir. 2021) (reviewing "discovery rulings . . . for abuse of discretion" and stating "reversal requires a showing that the ruling was both 'plainly wrong' and resulted in 'substantial prejudice'") (citation omitted), *petition for cert. filed*, 2021 WL 5343889 (U.S. Nov. 15, 2021) (No. 21-711).

As to relevancy, the recent allowance of the motion to amend

the petition expanded the time period during which Hase allegedly improperly misappropriated and transferred AeroBalloon funds and assets, which AeroBalloon purportedly owed to plaintiff, AeroBalloon's creditor.  (Docket Entry # 101).  Prior to the amendment, the pivotal time period of asset transfers was "at or around the time of the [September 2019] Final Arbitration Award" (Docket Entry # 10, ¶ 35.b) dating "back to the time AeroBalloon received notice of the arbitral filing in August 2018 (Docket Entry # 91, p. 4, n.3) (Docket Entry # 18-1, ¶ 33).  As presently framed, the operative second amended petition alleges that: *dating back to* "*January 2016* Hase caused AeroBalloon to transfer large amounts of its funds" (Docket Entry # 102, ¶ 56) (emphasis added); AeroBalloon did in fact transfer "its assets during the period [of] *January 2016*" to the present (Docket Entry # 102, ¶ 58.b) (emphasis added); and "AeroBalloon was insolvent and continued to be insolvent after some or all of the transfers" (Docket Entry # 102, ¶ 58.c).  The second amended petition also alleges that Hase diverted various amounts of AeroBalloon's funds to his personal checking account in 2016 and in 2017.  (Docket Entry # 102, ¶¶ 25, 27).

    The 2016 and 2017 returns are relevant to resolving these issues.  At a minimum, they will provide information regarding the time period during which AeroBalloon became insolvent or remained solvent.  Specifically, the returns provide a basis "to

7

determine how profitable" and solvent "AeroBalloon was over time" because, like the 2018 and 2019 tax returns, AeroBalloon's 2016 and 2017 tax returns likely include the company's gross and net income or loss and the company's expenses.  (Docket Entry # 85, ¶¶ 9-10) (Docket Entry # 122, pp. 7-10).  The 2016 and 2017 tax returns may also confirm Platt's calculations.

With relevancy established, the issue reduces to the existence of alternative sources for the information in the 2016 and 2017 tax returns.  Discovery to date includes production of "monthly bank and credit card statements for the period beginning January 1, 2016."[3]  (Docket Entry # 89-2, ¶ 3).  Using information in the bank statements and other material, Platt compiled his insolvency analysis for the 2016 and 2017 time period and also the cash transfers from AeroBalloon to Hase's personal checking account, Hase's joint money market account, the Hase and Kaplan Irrevocable Trust, and/or Hase directly or doing business as Newport Partners.  (Docket Entry # 100, pp. 11-12, 19-20).  As correctly articulated by respondents' expert, Platt was thus "able to create his own balance sheets and analysis of transfers for 2016 and 2017 without needing to rely on" AreoBalloon's or Hase's federal tax returns for 2016 and 2017.

---

[3] Platt attests that he "reviewed the financial information produced in this matter which primarily included AeroBalloon's bank and credit card statements from 2016 to 2019."  (Docket Entry # 100, p. 14, ¶ 22).

(Docket Entry # 121, p. 17, ¶ 4). The existing bank statements and other discovery (Docket Entry # 89-2, ¶¶ 3-7), including the 2018 and 2019 tax returns (Docket Entry # 122, pp. 7-10), provide ample information to assess AeroBalloon's insolvency and fraudulent transfers. Existing information in the discovery material produced to date, such as the monthly bank and credit card statements, constitute adequate alternative sources for the information in the 2016 and 2017 tax returns. Respondents therefore satisfy their burden to show alternative sources of the information in the 2016 and 2017 tax returns.

CONCLUSION

In accordance with the foregoing discussion, the motion to compel (Docket Entry # 108) is **DENIED**.

                                           /s/ Marianne B. Bowler
                                       **MARIANNE B. BOWLER**
                                       United States Magistrate Judge